IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Indiana University Health, Inc., | : |
| | : Case No. |
| Plaintiff, | : |
| | : **COMPLAINT** |
| v. | : |
| | : JURY TRIAL DEMANDED |
| Change Healthcare Solutions, LLC; | : |
| Change Healthcare Operations, LLC; | : |
| Change Healthcare, Inc. and UnitedHealth | : |
| Group Incorporated, | : |
| Defendants. | |

Plaintiff Indiana University Health, Inc. ("IU Health") brings this action against Defendants Change Healthcare Solutions, LLC, Change Healthcare Operations, LLC, Change Healthcare, Inc. and UnitedHealth Group Incorporated (together, "Change Healthcare") and hereby alleges upon personal knowledge and belief as follows:

## INTRODUCTION

1. This is an action for damages arising from Change Healthcare's failure to provide IU Health with contracted-for products and services that were necessary for the operation of IU Health's business, resulting in over $66 million in damages to IU Health.

2. Change Healthcare is one of the largest healthcare payment processing companies in the world. Change Healthcare is responsible for "process[ing] 15 billion health care transactions annually" which amounts to approximately "$2 trillion in health care payments each year out of the total $4.5 trillion spent on health care in the U.S." This

means that Change Healthcare "has some responsibility for more than 44% of all the dollars flowing through the health care system" and, in fact, "touches 1 in every 3 patient records."[1]

3.  IU Health is the largest and most comprehensive healthcare system in Indiana and is comprised of 16 hospitals and over 38,000 team members. It is the only academic medical center in Indiana. Dedicated to providing preeminent care throughout the state of Indiana and beyond, it partners with the Indiana University School of Medicine. IU Health's mission is to improve the health of Indiana's population and to lead the transformation of healthcare through quality, innovation, and education.

4.  IU Health was party to several agreements with Change Healthcare, pursuant to which Change Healthcare agreed to provide certain products and services necessary for IU Health to submit claims to insurance companies and receive reimbursement for performed services. Pursuant to the parties' Agreements, Change Healthcare agreed not only to provide each of the requested products and services consistent with industry standards, but also to maintain appropriate security to safeguard any confidential information provided to them.

5.  In February 2024, Change Healthcare announced that it had experienced a data breach wherein a threat actor was able to gain access to Change Healthcare's environment, exfiltrate a substantial quantity of data (including confidential information) and encrypt certain of Change Healthcare's systems rendering them inaccessible to their clients. In response, Change Healthcare chose to take its remaining systems offline, further rendering its products and services useless to its client healthcare providers and systems, including IU Health.

---

[1] 24-04-29-AHALTRtoEandConUHG-webwattachment.pdf (last visited February 19, 2026).

6. Change Healthcare failed to not only maintain appropriate safeguards to prevent the data breach, but it had no backup plan in place for clients like IU Health relying on its products and services to maintain its business operations. To that end, numerous healthcare providers have filed class actions against Change Healthcare seeking damages on behalf of a class of all healthcare providers whose use of Change Healthcare's services was disrupted, or whose payments were delayed as a result of the data breach and shutdown. These cases have been consolidated into an MDL for pretrial proceedings in the United States District Court for the District of Minnesota, and their consolidated complaint was filed on January 15, 2025. *See In re: Change Healthcare, Inc. Customer Data Security Breach*, Case No. 0:24-md-03108.

7. Change Healthcare's failure to live up to its contractual obligations resulted in significant business disruptions for IU Health. Indeed, as a result of the interruption in Change Healthcare's services, IU Health was forced to contract numerous new vendors to provide essential services and mitigate lost revenue; set up internal incident command centers to coordinate and track mitigation efforts; engage a temporary workforce to ensure initial billing, follow-up, and denial response was handled as timely as possible; implement certain IT routines and training to reduce denials and lost payments; and manually review and post the substantial backlog of files created by the shutdown.

8. To mitigate its damages and attempt to maintain operations, IU Health was forced to incur $66 million in costs and other losses, including temporary coding and cash applications resources to mitigate processing delays, and ultimately a significant increase in uncollected accounts.

## PARTIES

9. Plaintiff Indiana University Health, Inc. is an Indiana corporation with its principal place of business located in the State of Indiana.

10. Defendant Change Healthcare, Inc. is a Delaware corporation with its principal place of business located in the State of Minnesota.

11. Change Healthcare Solutions, LLC is a subsidiary of Change Healthcare, Inc. with its principal place of business located in the State of Minnesota.

12. Change Healthcare Operations, LLC is a subsidiary of Change Healthcare, Inc. with its principal place of business located in the State of Minnesota.

13. Defendant UnitedHealth Group Incorporated is a Delaware corporation with its principal place of business located in the State of Minnesota.

## JURISDICTION & VENUE

14. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

15. Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to IU Health's claims in this case took place in this judicial district.

## FACTUAL BACKGROUND

### *IU Health's Agreements with Change Healthcare*

16. On or about December 18, 2017, IU Health and Change Healthcare entered into a Financial Services Agreement wherein Change Healthcare agreed to provide billing and payment clearing services and to perform these services "in a professional manner consistent with industry standards by trained and skilled personnel" that "materially

conform to the mutually agreed requirements set forth in the applicable SOW, Set-up Plan, or Order Form." Change Healthcare further agreed that it would "use all reasonable care in handling and securing [IU Health's] Confidential Information and will employ all security measures used for its own proprietary information of similar nature."

17. On or about September 25, 2019, IU Health and Change Healthcare entered into a Business Associate Agreement whereby Change agreed to "implement and use appropriate technical, procedural and physical safeguards to prevent unauthorized Use or Disclosure of [IU Health's] PHI, including implementing requirements of the Privacy and Security Rules with regard to electronic PHI and all applicable federal and state laws and regulations regarding the privacy and security of PHI."

18. In the Business Associate Agreement, Change Healthcare further agreed to comply with the Indiana University Health, Inc. Security Requirements, which included a requirement to implement two-factor authentication.

19. In the Business Associate Agreement, Change Healthcare further agreed to "ensure that any and all data that it manages on [IU Health's] behalf shall be secured and backed up such that in the event that [Change Healthcare's] services or data center containing [IU Health's] data suffers an adverse system event, [IU Health] shall be able to continue its business as intended with respect to the Services provided by [Change Healthcare] to [IU Health] under the Service Agreement." And, in the event of "any Security Incident," Change Healthcare agreed to "immediately notify" IU Health.

### *Change Healthcare's Data Breach*

20. On February 12, 2024, cybercriminals used compromised credentials to remotely access a Change Healthcare Citrix portal, an application used to enable remote

access to desktops. Change Healthcare has admitted that the portal did not have multi-factor authentication, which would have prevented the threat actor from accessing Change Healthcare's environment.[2]

21. Once the cybercriminals gained access, they were able to move laterally within Change Healthcare's systems and exfiltrate data over a period of several days undetected.[3]

22. On February 21, 2024, Change Healthcare discovered that cybercriminals had deployed a ransomware attack inside its information technology environments and encrypted certain systems. Change Healthcare made the decision to disconnect and turn off its remaining systems.[4]

23. On March 7, 2024, Change Healthcare learned that a substantial quantity of data had been exfiltrated from its environment between February 17, 2024, and February 20, 2024.[5]

24. On April 22, 2024, Change Healthcare publicly confirmed that the impacted data could cover a substantial proportion of people in America.[6]

### *Impact on IU Health*

25. On February 21, 2024, Change Healthcare provided publication notice of the data breach to IU Health. Change Healthcare advised that it had disconnected its systems in response to the cyberattack and did not know how long the outage would last.

---

[2] *See* https://www.ibm.com/think/news/change-healthcare-22-million-ransomware-payment (last accessed February 19, 2026).
[3] *See* https://www.congress.gov/118/meeting/house/117242/witnesses/HHRG-118-IF02-Wstate-WittyS-20240501-U5.pdf (last accessed February 19, 2026).
[4] *Id.*
[5] *See* https://www.businesswire.com/news/home/20240620726809/en/Change-Healthcare-Provides-HIPAA-Media-Notice-Regarding-Cyberattack; https://solution-status.optum.com/incidents/hqpjz25fn3n7 (last accessed February 19, 2026).
[6] *Id.*

26. The data breach disrupted services critical to IU Health's business operations, including the electronic systems and workflows used to submit, route, track, and receive payment for healthcare claims. Impacted functions included eligibility verification, electronic claim submission and routing, electronic remittance advice and cash posting, claims status and denial management, and automated payer-related billing processes. These disruptions required IU Health to activate incident command and expend substantial time, financial resources, and personnel to implement alternative vendors and manual processes to maintain revenue cycle operations.

27. In a letter dated March 5, 2024, IU Health notified Change Healthcare that, as a result of the Incident and the shutdown of its services, Change Healthcare was in material breach of its Agreements with IU Health. Then, in letters dated March 15 and 22, 2024, IU Health requested that Change Healthcare provide it with critical information necessary for IU Health to assess the nature and scope of the Incident, the security of systems and information it provided to Change Healthcare, and any legal obligations arising from the Incident. In the same letter, IU Health notified Change Healthcare that it expressly reserved the right to seek indemnification for damages resulting from the Incident as information regarding the Incident's impact on IU Health was investigated. To date, Change Healthcare has not provided the requested information.

28. On February 2, 2026, IU Health requested indemnification for the costs and losses it sustained as a result of Change Healthcare's failure to provide the contracted-for products and services which created significant delays, a backlog of unprocessed claims, cash flow issues and increased administrative burden and operational costs.

29. To date, Change Healthcare has not agreed to indemnify IU Health for its losses.

## Count I
### Negligence/Gross Negligence

30. IU Health incorporates by reference herein all of the allegations contained in the preceding paragraphs.

31. Change Healthcare had a duty to exercise reasonable care in maintaining, operating, supervising, and controlling the network and platform where it stored IU Health's information.

32. HIPAA imposes a duty upon any custodian of PHI to use appropriate safeguards to protect the confidentiality, integrity, and availability of PHI, including implementation of administrative, physical and technical safeguards, as appropriate.

33. The duties imposed by HIPAA apply equally to the original custodian or owner of the PHI and any business associate thereof.

34. IU Health hired Change Healthcare as its clearinghouse to provide certain claims processing products and services, which included storing and protecting the PHI of its patients and employees.

35. IU Health put its trust and confidence in Change Healthcare as its vendor and reasonably relied on Change Healthcare to fulfill its duties and obligations.

36. Change Healthcare owed IU Health a duty of reasonable care in a manner consistent with the knowledge and skill possessed by such a vendor.

37. Change Healthcare breached its duty of reasonable care to IU Health by, among other things, failing to provide reasonable data security sufficient to protect IU Health's confidential information, failing to have an adequate contingency plan or backup

system in place to avoid a shutdown of necessary services following a foreseeable data security incident, and failing to warn IU Health of its inadequate security measures and the likelihood of a complete shutdown of its systems in the event of a data breach. Change Healthcare willfully disregarded the consequences of a foreseeable data breach and a complete shutdown in failing to implement adequate security and a contingency plan in the event of a data breach and shutdown.

38. IU Health was injured by Change Healthcare's negligence and gross negligence because it was required to spend significant time, money and resources in order to maintain its business operations in the wake of Change Healthcare's data breach, outage and failure to provide contracted-for products and services. But for Change Healthcare's breaches of duty and willful disregard for the risk of a foreseeable data breach and the consequences of a complete shutdown of services resulting from Change's failure to prepare a contingency plan, IU Health would have been able to timely submit claims and receive timely payment for their healthcare services.

39. IU Health's injuries resulting from the Change Healthcare data breach and outage were entirely foreseeable to Change Healthcare given that Change Healthcare was aware that IU Health relied upon Change Healthcare to timely process claims.

40. Change Healthcare's breach was the proximate cause of the foregoing.

41. IU Health has been, and continues to be, damaged in an amount not less than $66 million, plus attorneys' fees and interest accrued and continuing to accrue thereon.

## Count II
Breach of Contract

42. IU Health incorporates by reference herein all of the allegations contained in the preceding paragraphs.

43. The Financial Services Agreement and Business Associate Agreement (the "Agreements") each represent valid, binding, enforceable contracts between IU Health and Change Healthcare.

44. IU Health fully fulfilled its obligations under the Agreements.

45. Pursuant to the clear and unambiguous terms of the Financial Services Agreement, Change Healthcare agreed to provide billing and payment clearing services and to perform these services "in a professional manner consistent with industry standards by trained and skilled personnel" that "will materially conform to the mutually agreed requirements set forth in the applicable SOW, Set-up Plan, or Order Form." Change Healthcare further agreed that it will "use all reasonable care in handling and securing [IU Health's] Confidential Information and will employ all security measures used for its own proprietary information of similar nature."

46. Pursuant to the clear and unambiguous terms of the Business Associate Agreement, Change Healthcare agreed to: (1) implement and use appropriate technical, procedural and physical safeguards to protect IU Health's information; (2) adhere to all applicable federal and state laws and regulations regarding the privacy and security of PHI; (3) comply with the Indiana University Health, Inc. Security Requirements, which included a requirement to implement two-factor authentication; (4) secure and back up IU Health's data in such a way that would allow IU Health to continue its business even if Change Healthcare suffered a security event; and (5) immediately notify IU Health of any security incident.

47. Change Healthcare materially breached the Agreements by failing to implement and maintain appropriate safeguards to protect IU Health's information, failing

to implement a contingency plan or back up to allow IU Health to maintain business operations in the event of a security incident, and by failing to provide the contracted-for products and services in accordance with industry standards and IU Health's security requirements.

48. IU Health was injured by Change Healthcare's breach of contract because it was required to spend significant time, money and resources in order to maintain its business in the wake of Change Healthcare's data breach, outage and failure to provide contracted-for products and services, including implementing alternative solutions and vendors. But for Change Healthcare's breaches of contract, IU Health would have been able to timely submit claims and receive timely payment for their healthcare services.

49. Change Healthcare's breach was the proximate cause of the foregoing.

50. IU Health has been, and continues to be, damaged in an amount not less than $66 million, plus attorneys' fees and interest accrued and continuing to accrue.

## Count III
Unjust Enrichment

51. IU Health incorporates by reference herein all of the allegations contained in the preceding paragraphs.

52. IU Health conferred benefits on Change Healthcare in the form of payments for Change Healthcare's services. Both parties understood that the payments made by IU Health for Change Healthcare's services were intended to cover industry standard services, appropriate cybersecurity measures and an adequate contingency plan and/or backup system to ensure Change Healthcare's services would not be rendered useless. Had IU Health been aware that Change Healthcare's cybersecurity was inadequate and its products

and services would be rendered completely useless in the event of a foreseeable data breach, IU Health would not have paid for Change Healthcare's services.

53. Change Healthcare wrongfully retained the payments made by IU Health despite failing to provide industry standard services, appropriate cybersecurity measures or an adequate contingency plan and/or backup system. Thus, Change Healthcare has been unjustly enriched at IU Health's expense.

54. Change Healthcare has no justification for the retention of these payments.

55. IU Health has suffered injuries as a result of Change Healthcare's wrongful conduct. Thus, Change Healthcare should be required to disgorge all benefits received from IU Health that it has wrongfully retained.

56. This claim is brought in the alternative to the breach of contract claim.

## Count IV
Fraud

57. IU Health incorporates by reference herein all of the allegations contained in the preceding paragraphs.

58. In the parties' Agreements, Change Healthcare made numerous false statements to IU Health regarding its ability to protect IU Health's data and its ability to provide the contracted-for products and services necessary for IU Health's operations.

59. In the parties' Financial Services Agreement, Change Healthcare stated that it would provide billing and payment clearing services "in a professional manner consistent with industry standards by trained and skilled personnel" that "materially conform to the mutually agreed requirements set forth in the applicable SOW, Set-up Plan, or Order Form." Change Healthcare further stated that it would "use all reasonable care in handling

and securing [IU Health's] Confidential Information and w[ould] employ all security measures used for its own proprietary information of similar nature."

60. In the Business Associate Agreement, Change Healthcare stated that it would "implement and use appropriate technical, procedural and physical safeguards to prevent unauthorized Use or Disclosure of [IU Health's] PHI, including implementing requirements of the Privacy and Security Rules with regard to electronic PHI and all applicable federal and state laws and regulations regarding the privacy and security of PHI."

61. In the Business Associate Agreement, Change Healthcare further stated that it would comply with the Indiana University Health, Inc. Security Requirements, which included a requirement to implement two-factor authentication.

62. In the Business Associate Agreement, Change Healthcare also stated that it would "ensure that any and all data that it manages on [IU Health's] behalf shall be secured and backed up such that in the event that [Change Healthcare's] services or data center containing [IU Health's] data suffers an adverse system event, ]IU Health] shall be able to continue its business as intended with respect to the Services provided by [Change Healthcare] to [IU Health] under the Service Agreement."

63. Change Healthcare made these statements with the intent to induce IU Health's reliance in order to obtain IU Health as a customer.

64. These statements were false, as evidenced by Change Healthcare's data breach, outage and failure to provide the contracted-for products and services.

65. Change Healthcare knew the statements it made regarding its ability to protect IU Health's data and to provide the products and services—including in the event of a data breach—were false, or showed reckless disregard for their truth.

66. IU Health relied on Change Healthcare's statements regarding the state of its security and ability to fulfill its obligations as outlined in the parties' Agreements when selecting Change Healthcare as a service provider.

67. Change Healthcare's statements were material to IU Health's selection of Change Healthcare as its service provider. Without these statements regarding its provision of data security and ability to provide the relevant products and services, IU Health would not have selected Change Healthcare as its service provider.

68. IU Health was injured by Change Healthcare's false statements because it was ultimately required to spend significant time, money and resources in order to maintain its business in the wake of Change Healthcare's data breach, outage and failure to provide contracted-for products and services.

69. Change Healthcare's fraudulent statements were the proximate cause of the foregoing.

70. IU Health has been, and continues to be, damaged in an amount not less than $66 million, plus attorneys' fees and interest accrued and continuing to accrue thereon.

### **PRAYER FOR RELIEF**

WHEREFORE, IU Health requests a judgment against Change Healthcare and that the Court grant the following:

A. An award of damages, as allowed by law, in an amount to be determined;

B. An award of attorneys' fees, costs, and litigation expenses, as allowed by law;

C. Pre-judgment interest on all amounts awarded;

D. Such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

      IU Health hereby demands that this matter be tried before a jury.

Dated: February 19, 2026                            Respectfully submitted,

                                                      By:    *Danyll W. Foix*
                                                              Danyll W. Foix (#0285390)
                                                              **BAKER & HOSTETLER LLP**
                                                              Washington Square, Suite 1100
                                                              1050 Connecticut Avenue, N.W.
                                                              Washington, DC  20036-5403
                                                              Telephone: 202.861.1500
                                                              Facsimile: 202.861.1783
                                                              Email: dfoix@bakerlaw.com